Joe SACCO, also known as Joe A. Sacco, and the City of Trinidad, Colorado, a municipal corporation, Appellants,

v.

John T. OXLEY, Appellee.

No. 9856.

United States Court of Appeals Tenth Circuit.

Nov. 4, 1968.

William F. Dwyer, Denver, Colo. (F. E. Dickerson, Denver, Colo., with him on the brief), for appellants.

Robert A. Ruyle and David J. Miller, Greeley, Colo., for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

The appellee commenced this action to have the appellant, Joe Sacco, specifically perform as the vendor a contract for the sale of a farm by the conveyance of the vendor's undivided interest in the property. The trial court gave judgment for the appellee-vendee and ordered the vendor to convey his undivided one-half interest, and he has taken this appeal.

The record shows that the appellant, Joe Sacco, and his wife owned the farm in question as joint tenants. The subject of the sales agreement was the farm on which the residence of the appellant and his wife was located. It also included other farm improvements, water and ditch rights, and shares of capital stock of the Model Land and Irrigation Company which are considered to be real estate.

The appellee first discussed with appellant the sale to him of the farm and was shown the property. A price was agreed upon the same day and in the afternoon appellee went to his attorney's office and had a contract of sale prepared. Also on the same day the appellant after consultation with his own attorney executed the agreement. Appellant's wife was not present during the negotiations for the sale nor was she present with the attorneys and the parties at the time the contract was prepared and signed by her husband and the appellee. The contract described appellant and his wife as "Sellers," and provided a place for the signature of the appellant's wife. Several attempts were made by appellee and his attorney after the contract was signed by the appellant to secure the signature of the wife, but she did not sign it. As indicated above, this action was then brought by the purchaser and specific performance against appellant was ordered. In the meantime appellant and his wife had sold the property to another for a larger price.

The trial court found that at the time the contract was signed the appellee intended to purchase all of the property and water rights described in the agreement. The court also found that the appellant, Joe Sacco, intended to sell all of the property and water rights that he owned, and that the contract of sale was not "conditioned" upon the consent or assent of appellant's wife. The trial court thus concluded that the agreement was binding as between the parties as to the appellant's one-half interest and the joint tenancy was terminated.

The record shows that at the time of the preparation and execution of the contract by the parties, all of those involved assumed that the wife of the appellant would sign the agreement, and no other possibility was discussed or considered. The agreement recites that the husband and wife are the "Sellers," and there is no separation of the "Sellers'" interests in any way. Appellee's lawyer, who prepared the contract, testified it was drafted by him for his client's purchase of the entire interest held by the husband and wife, and not for an undivided interest. This attorney also testified that he understood that appellant's wife would come to his office and sign the contract after appellant had signed it. When she did not come in he wrote her requesting her to come to the office, but she did not do so. Appellee knew at the time the agreement was drafted that appellant and his wife were joint tenants.

The appellee-vendee also testified that it was his intention at the time the contract was signed to purchase the entire interest in the farm and water rights. His employee who was present at all material times testified that no other possibility was discussed.

The appellant's testimony indicates that at the time he executed the contract, he contemplated that the entire property would be sold, and it is also apparent from his testimony that he understood that his wife's signature was necessary.

He testified that he was told at the time he signed the contract that his wife could come in later and sign it and " * * * it would be all right and if she did not want to sign it, the deal would be off." When appellant's wife did not sign, the appellee retained the partially executed agreement and sought to secure her signature through extensions of time to give up possession of the home, and offered later to pay for the drapery and other furnishings if she wished.

The trial court made no finding and there is no evidence in the record before us that the husband acted in bad faith in connection with the failure of the wife to execute the agreement. There is testimony that the appellant's wife stated she would sign when her husband told her to, and there is no evidence that he ever asked his wife to sign. However, as indicated above, this is no evidence of bad faith, and we do not reach the question as to whether this makes any difference or not.

Thus it must be concluded that the parties expected the wife to execute the agreement, and also intended that the entire property would be conveyed. Nothing else was considered. This being the state of the record, the agreement of purchase and sale cannot be carried out in any respect since the initial intention of the parties does not permit it. This intention is the fundamental issue, and the legal possibility of one of the two joint tenants conveying his interest separately is secondary and does not develop as an issue under the facts here presented.

The trial court found that the agreement was not conditioned upon the wife's assent; however, there is no evidence in the record that the undertaking of the husband was to be separate from that of the wife. The evidence as to the initial intention of both the parties is not in conflict. The trial court's finding is not supported by the record if it means more than the absence of such a condition in the agreement. Thus no agreement was consummated because all the persons intended by the parties to participate in the agreement and the conveyance did not sign. Ball v. Wright, 118 Colo. 410, 195 P.2d 739. See also Annot., 154 A. L.R. 767.

The record shows that the appellant knew the nature of the tenancy and the extent of his interest in the property before the agreement was signed. We are thus not confronted with a case where the parties were not aware of a condition relating to the title as in Emery v. Medal Building Corp., 436 P.2d 661 (Colo.1968), where the parties were not aware of an encroachment and full performance by vendor was not possible, or Kuper v. Scroggins, 127 Colo. 416, 257 P.2d 412 (1953), where there were outstanding mineral rights, and but one person was the vendor. The seller here knew he had a one-half interest, but he as the others intended that the agreement cover the entire estate.

There are several Colorado cases dealing with broker's commissions where the agent knew of the joint tenancy but failed to secure the signature of both parties on a listing. These include Gray v. Blake, 131 Colo. 560, 283 P.2d 1078; Gray v. Blake, 262 P.2d 741; Morrison & Morrison, Inc. v. Sunshine, 142 Colo. 518, 351 P.2d 897. In these cited cases the agent with knowledge of the tenant's limited interest was denied relief. The knowledge by both parties in the case before us as to the ownership of each of the "Sellers" is a factor which directs us to deny the purchaser any option to take only a part of the estate. In the sale of property including the residence of a husband and wife, when their respective interests are known, it would require clear evidence to support a finding of intent by one to sell an undivided interest to a stranger. There is no reason, in view of the record described above, why the buyer when dealing with both as "sellers" of the whole and failing to secure the assent of one, should be permitted to take a part. Colorado cases as Prosser v. Schmidt, 118 Colo. 502, 197 P.2d 318, and the cases cited from other

jurisdictions in Kuper v. Scroggins, 127 Colo. 416, 257 P.2d 412, are not applicable.

Reversed and remanded.